IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CITY OF WACO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:15-CV-310  RP |
| | § | |
| KLEINFELDER CENTRAL, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiff City of Waco's Motion for Attorney's Fees, (Dkt. 91), and Request for Entry of Bill of Costs, (Dkt. 90). After reviewing these filings, the relevant case law, and the parties' respective responses, replies, and surreplies, the Court issues the following order.

### I.  BACKGROUND

Plaintiff City of Waco brought this action against Defendant Kleinfelder Central, Inc. on October 26, 2015, arguing that Kleinfelder failed to perform its obligations under an agreement related to the remediation of a property owned by the City that had previously housed a chemical mixing facility. The case went to trial on October 17, 2016; after a three day trial, the jury returned a $160,353.86 verdict for the City.

On October 28, 2016, Plaintiff City of Waco filed a motion for entry of judgment,[1] request for entry of bill of costs, and motion for attorney's fees. In its bill of costs, the City seeks $17,714.03. These costs consist of fees for deposition transcripts, expert testimony, copies of documents for production, and the City's filing fee. In its motion for attorney's fees, Plaintiff City of Waco seeks $439,809.00 in attorney's fees, plus an additional $35,000 in anticipated attorney's fees should Defendant Kleinfelder unsuccessfully appeal the judgment.

---

[1] The Court addresses this motion by separate order.

1

Defendant Kleinfelder responded to the City's post-trial filings on November 14, 2016. In response to the City's bill of costs, Kleinfelder argued that the City was not entitled to any fees for expert testimony because the City's experts were not court appointed in accordance with 28 U.S.C. § 1920(6). In responding to the City's motion for attorney's fees, Kleinfelder argued that the City's requested fees were excessive and unreasonable given the jury's award and should be denied. Alternatively, Kleinfelder argued that because the City failed to properly segregate unrecoverable fees it incurred on its negligence claim, which was dismissed at summary judgment, it should at most recover its trial fees and costs. Further, in its response, Kleinfelder also noted that it intends to file a motion for judgment as a matter of law.

In the City's reply to Kleinfelder regarding its bill of costs, filed on November 21, 2016, the City asserted that it was seeking expert fees pursuant to Federal Rule of Civil Procedure 26, not 28 U.S.C. § 1920(6). In its reply regarding attorney's fees, the City reduced its initial request by two percent to account for time spent on work solely related to its negligence claim. Further, it requested an additional $8,000 for time spent drafting replies to Klenifelder's responses to its post-trial filings and an additional $10,000 should Kleinfelder renew its motion for judgment as a matter of law.

Finally, on December 5, 2016, Kleinfelder filed a surreply to the City's motion for attorney's fees, reiterating and expanding on its initial objections to the motion.

The Court will first address Plaintiff City of Waco's bill of costs, then its motion for attorney's fees.

## II.     BILL OF COSTS

As previously noted, the City seeks $17,714.03 in its bill of costs, associated with expenses for deposition transcripts, expert testimony, copies of documents for production, and its filing fee. The only expenses Kleinfelder argues should be excluded from this bill are those associated with expert testimony because they are not authorized by 28 U.S.C. § 1920. These costs consist of

$3,558.14 for expert Michael McLaughlin's fees and expenses for traveling to, preparing for, and attending his deposition and $4,761.18 for expert Edward Kavazanjian's fees and expenses for traveling to, preparing for, and attending his deposition. The City argues that Federal Rule of Civil Procedure 26(b)(4)(E)(ii) requires that these costs be reimbursed.

While recovery of expert witness fees is ordinarily limited to the statutory amounts authorized under 28 U.S.C. § 1821 and § 1920, *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987)), Federal Rule of Civil Procedure 26(b)(4)(E) provides an independent basis of recovery of expert fees as part of discovery. *See id.* (citing previous version of rule related to expert fees, located at Fed. R. Civ. P. 26(b)(4)(C)).

Rule 26(b)(4)(E) provides:

> *Payment*. Unless manifest injustice would result, the court must require that the party seeking discovery:
> (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and
> (ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

Fed. R. Civ. P. 26(b)(4)(E). Rule 26(b)(4)(A) relates to an expert who may testify at trial, while Rule 26(b)(4)(D) relates to experts employed for trial preparation only. Because the City only seeks fees for experts who it planned to have testify at trial,[2] only subsection (i) and discovery under Rule 26(b)(4)(A) are relevant here.

Rule 26(B)(4)(A) provides:

> *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. . . .

---

[2] McLaughlin did not testify at trial after the Court granted in part Kleinfelder's motion to exclude his testimony; Kavazanjian did testify at trial.

Fed. R. Civ. P. 26(b)(4)(A). Thus, under Rule 26(b)(4)(E)(i), a party is entitled to reimbursement of a reasonable fee for the time its expert spent related to his or her deposition. Here, the City has included costs related to the time that its experts spent responding to their depositions. The Court finds that the amount requested in the City's bill of costs for this time was reasonable. Noting that Kleinfelder did not object to any other fees or expenses listed on the City's bill of costs, the Court will grant Plaintiff City of Waco's request for entry of bill of costs.

### III. MOTION FOR ATTORNEY'S FEES

In addition to its bill of costs, the City has moved for attorney's fees. After modifying its initial request, the City now moves for $429,052.82 for work already performed, $10,000 for anticipated work should Kleinfelder renew its motion for judgment as a matter of law, and $35,000 for anticipated work should Kleinfelder appeal the Court's judgment. In support of its motion, the City provided affidavits, a redacted bill summary with time entries for each attorney and paralegal who worked on the matter on behalf of the City and biographies for each of the attorneys.

#### A. Attorney's Fees for Breach of Contract

Under Texas Civil Practices and Remedies Code § 38.001, a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code. § 38.001(8). The Texas Supreme Court has explained that "[t]o recover attorney's fees under Section 38.001, a party must prevail on the underlying claim and recover damages." *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015). Under section 38.001, although the court has discretion to determine the amount of attorney's fees, it "has no discretion to deny attorney's fees when it is presented with evidence" of those fees. *Id.* (citing *Brent v. Field*, 275 S.W.3d 611, 622 (Tex. App.—Amarillo 2008, no pet.).

Texas law provides a rebuttable presumption that usual and customary fees are reasonable. Tex. Civ. Prac. & Rem. Code § 38.003. The court entertaining a motion for attorney's fees may take judicial notice of reasonable and customary fees, along with the case file. *Id.* § 38.004. The preferred method of computing a reasonable fee under section 38.001 is the "lodestar" method, or the product of reasonable hours times a reasonable rate. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 759 (Tex. 2012); *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761 (Tex. App.—Fort Worth 2005, no pet.). Under the lodestar method for determining attorney's fees, "[f]actors that a factfinder should consider when determining the reasonableness of a fee include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered."

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Kleinfelder makes five main arguments as to why the City should not be awarded the attorney's fees it requests. Four of Kleinfelder's arguments, however, do not directly relate to the lodestar method for determining reasonableness. Thus, the Court will first address these arguments before turning to its overall analysis of the reasonableness of the City's attorney's fee request.

### 1. Kleinfelder's Arguments

First, Kleinfelder argues that the City's demand was unreasonable and excessive, precluding the City from recovery of attorney's fees under Texas law. Second, it argues that the City failed to segregate recoverable and unrecoverable attorney's fees as required under Texas law. Third, it argues that fees incurred prior to the City's Chapter 38 demand should not be reimbursed. And finally, Kleinfelder argues that fees associated with unreasonably redacted billing entries by the City's attorneys should not be reimbursed.

### a. Excessive and Unreasonable Demand

Kleinfelder argues that the City's initial $1 million demand was unreasonable given that the jury only awarded it $160,353.86 at trial. Kleinfelder argues that an excessive and unreasonable demand should bar the award of attorney's fees entirely.

In Texas, "[a] creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt." *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981). "A demand is not excessive, however, simply because it is greater than what the factfinder later determines is actually due." *Barnes v. LPP Mortg., Ltd.*, 358 S.W.3d 301, 308 (Tex. App.—Dallas 2011, pet. denied). Instead, "a demand is excessive [where] the creditor acted unreasonably or in bad faith." *Id.* Thus, "[a]pplication of this rule is limited to situations where the creditor refuses a tender of the amount actually due or indicates clearly to the debtor that such a tender would be refused." *Hernandez v. Lautensack*, 201 S.W.3d 771, 777 (Tex. App. 2006).

Such a situation does not exist here. Because of the nature of damages the City incurred relating to Kleinfelder's breach, there was not a specific amount Kleinfelder owed the City that it could include in a demand. Instead, the City estimated its damages based on its actual expenses and what it estimated it would have spent absent Kleinfelder's breach. The Court finds no reason to

conclude that this estimate or the City's initial $1 million demand were unreasonable or in bad faith and finds that the City's demand was not excessive.

### b. Failure to Segregate

Next, Kleinfelder argues that the City's failure to segregate time spent by its attorneys on its negligence claim and time spent working with one of its expert witnesses, Michael McLaughlin, renders much of the City's requested fees unrecoverable.

Under Texas law, payment of attorney's fees is only permitted if expressly authorized by statute or by a contract between the parties. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Thus, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* at 313. "It is only when legal services advance both recoverable and unrecoverable claims that the services are so intertwined that the associated fees need not be segregated." *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007). However, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Id.* (quoting *Tony Gullo*, 212 S.W.3d at 314).

"No statute provides for the recovery of attorney fees in a negligence action." *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002). Thus, here, Kleinfelder argues that the City's motion for attorney's fees should be denied to the extent it seeks recovery of fees for its negligence claim. Further, Kleinfelder argues that because the City's motion fails to segregate attorney's fees for its negligence claim, all fees the City requests that were incurred prior to the Court's dismissal of the negligence claim should be excluded. In response, the City concedes that fees for discrete legal services related to its negligence claims are unrecoverable, estimating that those are approximately two percent of its total attorney's fees. Kleinfelder contests this estimate and argues that an actual "accounting" or further segregation is required. (Def.'s Surreply, Dkt. 100, at 5).

7

While Kleinfelder is correct that fee segregation is required where some claims advanced by a party allow for the recovery of attorney's fees and others do not, a party need not specifically account for what amount of time was spent on what claims. *See Tony Gullo*, 212 S.W.3d at 313–14 ("[M]any if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other . . . . This standard does not require more precise proof for attorney's fees than for any other claims or expenses."). Instead, a party may estimate how much of its attorney's fees are attributable solely to the claim that must be segregated. *Id.* at 314 ("[Plaintiff's] attorneys did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition; an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim."). If segregation is required, a party may still recover legal fees for work required for both claims. *Id.* at 313 ("Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, *voir dire* of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.").

Here, the City estimates that two percent of its total attorney's fees were spent on discrete legal services that advanced only its negligence claim. Based on its review and understanding of the case, the Court finds that this estimate is somewhat low. While both the City's negligence claim and its breach of contract claim stem from the same underlying facts, the negligence claim required research and discovery regarding the applicable standard of care that was irrelevant to the breach of contract claim. Further, as the City acknowledges, the negligence claim also involved some additional drafting in various filings, including the complaint and the City's response to Klenifelder's motion for summary judgment. The Court acknowledges, however, that the negligence claim was not addressed by the City's motion for summary judgment and was dismissed before trial,

significantly limiting the total amount of time the City's counsel spent on the claim. Thus, the Court finds that a more reasonable estimate of the fees solely attributable to the City's negligence claim is five percent.

Kleinfelder also argues that the City is required to segregate fees associated with one of the City's planned experts, Michael McLaughlin. The Court excluded a portion of McLaughlin's planned testimony, and the City ultimately did not call him to testify at trial. As the City notes in its reply, Kleinfelder cites no case law in support of its argument that fees related to McLaughlin must be segregated because he did not testify at trial. Further, the Court sees no reason to conclude that time spent related to McLaughlin was unreasonable. Thus, the Court will not exclude the attorney's fees incurred in relation to McLaughlin from the City's award.

### c. Fees Incurred Prior to Demand

Next, Kleinfelder argues that all fees the City incurred prior to making a demand in accordance with Texas Civil Practices and Remedies Code § 38.002(2) are not recoverable. Kleinfelder notes that the City's attorneys began working on its claims on February 12, 2013, but that Kleinfelder did not receive a demand until August 18, 2015, two and half years later. The City argues that Section 38.002 makes no restriction on the amount of time a party has to make a demand and that no other authority supports Kleinfelder's argument.

Specifically, Section 38.002 provides:

> To recover attorney's fees under this chapter:
>
> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

9

Tex. Civ. Prac & Rem. Code § 38.002. Here, there is no dispute that the City was represented by an attorney and presented a claim to Kleinfelder on August 18, 2015. (*See* Def.'s Resp., Dkt. 92, at 8). Thus, because payment on the demand was not made within thirty days of a demand, attorney's fees may be recovered. *See id.* § 38.002. As noted by the City, Kleinfelder fails to identify any case law supporting its argument that the City should not be awarded attorney's fees for its expenses before the City's demand was made, and the Court sees no reason to do so as a matter of law. Therefore, the Court will not eliminate or reduce the attorney's fees the City incurred prior to August 18, 2015 on the basis that they are unrecoverable because a demand had not yet been made.

### d. Unreasonably Redacted Billing Entries

Finally, Kleinfelder argues that the City should not be awarded attorney's fees where it significantly redacted certain time entries. Kleinfelder argues that many of the entries are so heavily redacted the neither it nor the Court can properly assess the reasonableness of the entries and that the Court should review the entries *in camera*. The City, in response, asserts that all redactions are necessary to protect attorney-client privilege.

Here, the Court finds that City's redactions generally appear reasonable. The Court will not second-guess the City's assessments of what material is privileged when it has no reason to believe that the City has over-redacted its billing entries. Thus, the Court concludes that the City's redactions do not warrant any reduction of the City's requested attorney's fees or necessitate an *in camera* review of the City's attorneys' billing entries.

### 2. Reasonableness of Requested Fees

Based on its above analysis, the Court begins with a lodestar amount of $415,918.55 for work performed by the City up to its submission of its post-trial motions. Turning to the lodestar analysis, the Court will focus on four factors: (a) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(b) the fee customarily charged in the locality for similar legal services; (c) the amount involved and the results obtained; and (d) the experience, reputation, and ability of the lawyer or lawyers performing the services. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see also Acad. Corp. v. Interior Buildout & Turnkey Const., Inc.*, 21 S.W.3d 732, 742 (Tex. Ct. App.—Houston [14th Dist.] 2000, no pet.) (noting that the factors are guidelines rather than elements of proof).

### a. Time, Labor, and Skill Required

Turning to the City's billing entries and the overall reasonableness of the fees requested by the City, the Court first notes the substantial number of hours that the City's attorneys billed—more than 2,000. (Pl.'s Mot. for Atty's Fees, Dkt. 91-2, Ex. B at 2). Given the difficulty of determining whether a certain amount of time is required in the abstract, the Court has carefully reviewed the billing entries for the City's attorneys and concluded that more time was spent than necessary for the City's breach of contract claim. The Court will give just a few examples of billing entries that lead it to this conclusion.

First, the Court notes that the City requests more than $55,000 in fees for work performed before it began drafting its first complaint. (*See id.* at 2–11). Some of this time was certainly necessary, such as time spent reviewing the file, (*id.* at 2), conducting legal research into possible causes of action and potential affirmative defenses, (*id.* at 5), and conducting factual research regarding soil from the landfill, (*id.* at 5). But tasks like these constitute only a portion of the total hours from this time, and much of the time is attributed to "Calls," "Correspondence," or "work on issues" that lack sufficient detail for the Court to conclude that the work was necessary to advance the City's breach of contract claim. (*See, e.g., id.* at 9).

Second, the Court notes that the City has requested several hundred dollars for time a paralegal spent printing documents (not the cost of the supplies needed for printing). (*See id.* at 18–

19). It is unclear to the Court why a paralegal—rather than an unbilled staff member—performed a task that does not appear to require legal expertise. And while the time billed for printing was relatively small, it is demonstrative of the City's frequent use of higher-billing attorneys and staff where lower-billing attorneys or paralegals could have completed the necessary work.

Third, the Court notes that the City has requested fees for one attorney to attend trial who did not represent the City before the Court or the jury, at a cost of several thousand dollars. (*Id.* at 42). While the City and its attorneys may have made an assessment that this would help advance their claims, it would be difficult for the Court to conclude that this time was necessary to the City's claim and not duplicative.

Again, these are just a few examples of time entries that lead the Court to believe that a moderate portion of the time the City's attorneys expended was not necessary to advancing the City's breach of contract claim. Overall, the Court concludes that the vast majority of the time the City's counsel expended on the case was necessary and well-accounted for.

Further, while the factual issues related to the City's breach of contract claim were somewhat complex, the legal issues largely were not, and overall the claim was unlikely to need substantially more work because of its novelty or complexity. Based on its assessment of the time and labor needed for the City's breach of contract claim, the Court finds that a slight downward adjustment of the lodestar amount is warranted.

### b. Customary Fee

Counsel for the City submits an affidavit stating that its fees—generally $210 per hour for more experienced attorneys and $180 for less experienced attorneys—are "reasonable and customary in the Waco area for lawyers of [their] experience, reputation, ability, and credentials." (Pl.'s Mot. for Atty's Fees, Dkt. 91-2, Ex. B at 2). Based on its own knowledge and experience, the

Court agrees that these fees are reasonable in the locality for similar legal services and finds that this factor supports the current lodestar amount.

### c. Amount Involved and Results Obtained

Kleinfelder argues that the disparity between the amount of damages the City claimed at trial and the amount awarded by the jury indicate that the attorney's fees for the claim are unreasonable. Kleinfelder argues that the amount the City requests in attorney's fees should be reduced by eighty-five percent[3] because the jury awarded the City eighty-five percent less than was requested at trial. Kleinfelder further notes that it made an offer of judgment before dispositive motions were filed of $150,000—approximately $10,000 less than the jury awarded the City at trial. The City responds that this factor is not dispositive, notes that Texas courts often award attorney's fees that far exceed the amount awarded in damages, and argues that it had already incurred substantial attorney's fees at the time Kleinfelder made its offer of judgment.

While "the amount of damages awarded is not the sole determining factor" of whether an attorney's fee award is reasonable, attorney's fees must bear some reasonable relationship to the amount in controversy. *E.g.*, *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 153 (Tex. App.—Dallas 2012, no pet.). In fact, many Texas courts consider the degree of the plaintiff's overall success "the most critical factor in in determining the reasonableness of a fee award." *Farmers Grp. Ins., Inc. v. Poteet*, 434 S.W.3d 316, 333 (Tex. App.—Fort Worth 2014, pet. denied) (citing *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009)). However, "there is no rule that fees cannot be more than actual damages," *Sharifi*, 370 S.W.3d at 153, and fee amounts even three times the amount of

---

[3] In fact, Defendant Kleinfelder argued that the requested fees should be reduced by 87%, not 85%, stating that the City sought $1,236,699.22 at trial and was only awarded $160,353.86. (Def.'s Resp., Dkt. 92, at 4). The Court cannot, however, locate the source of Kleinfelder's claim that the City requested $1.2 million at trial. Instead, the Court's review of the exhibits presented at trial demonstrate that the City requested $1,081,658.22 at trial. (Pl.'s Trial Exhibits, Dkt. 81-1, at 51). This amount is consistent with the amount the City claimed it requested from the jury at trial in its briefing on attorney's fees. (Pl.'s Reply, Dkt. 98, at 5). Thus, the jury's ultimate award was 14.8 % of the damages sought by the City at trial.

13

actual damages have been found reasonable. *See Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 602 (Tex. App.—Dallas 1990, no pet.).

As the Court already stated, it does not find that the amount of damages sought by the City was unreasonable or sought in bad faith. However, the Court cannot ignore the significant difference between the damages sought by the City and the final jury award. Here, the current lodestar amount, based on the City's requested fees and the Court's slight modification of that amount to account for the City's negligence claim, is more than two and half times greater than its ultimate damages award.

The Court cannot agree with Kleinfelder, however, that an eighty-five percent reduction (or a substantially similar one) is appropriate. While Kleinfelder's offer of judgment was within ten percent of what the City was ultimately awarded at trial, that amount would not have accounted for any of the City's attorney's fees, which the City is entitled to.[4] Thus, in order to be made whole, the City had to continue with its claims and, thus, continue to incur attorney's fees. With these competing considerations in mind, the Court concludes that the lodestar amount should be substantially reduced, but that it is appropriate for the City's attorney's fees to exceed the City's total damages.

### d. Experience, Reputation, and Ability of Counsel

With its motion for attorney's fees, the City submitted biographies for each of the attorneys that worked on the City's breach of contract claim. These biographies demonstrate the strong qualifications of the City's counsel and weigh in favor of the current lodestar amount.

---

[4] The City claims that it incurred more than $200,000 in attorney's fees on both its breach of contract and negligence claims prior to Kleinfelder's offer of judgment. Based on the Court's assessments regarding the City's negligence claim and the Court's conclusions regarding the adjustment of the lodestar, *see supra and infra*, the Court estimates that the City's necessary attorney's fees on its breach of contract claim at the time of Kleinfelder's offer of judgment would have exceeded $100,000.

14

### e. Adjustment to Lodestar

Based on the above assessment of the factors set out in *Arthur Andersen* and its careful consideration of this case, the Court finds that a forty-percent reduction in the lodestar amount is appropriate here and thus will award the City $249,551.13 for the attorney's fees incurred prior to its post-trial filings.

### 3. The City of Waco's Other Fees

In addition to attorney's fees incurred through trial, the City requests $2,000 for the preparation of its motion for attorney's fees, bill of costs, and motion for entry of final judgment; $8,000 for replies to Kleinfelder's oppositions to each of those filings; $10,000 should Kleinfelder renew its motion for judgment as a matter of law; and $35,000 should Kleinfelder appeal. In support of these fees, the City relies on the affidavits of its counsel that such amounts are reasonable and necessary to representing the City.

"The general rule is that a trial court's award of attorney's fees may include appellate attorney's fees," but it is not required to include such fees. *Hunsucker v. Fustok*, 238 S.W.3d 421, 431 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Here, the Court will grant the City's motions based on the evidence supplied in its affidavits, but will slightly reduce the amounts requested for conditional attorney's fees based on its review of the time the City's counsel expended on similar filings. Thus, it finds that the City reasonably and necessarily incurred $2,000 for the preparation of its motion for attorney's fees, bill of costs, and motion for entry of final judgment and $8,000 for replies to Kleinfelder's oppositions to each of those filings. The Court also finds that the City will reasonably and necessarily incur $8,000 should Kleinfelder unsuccessfully renew its motion for judgment as a matter of law and $30,000 should Kleinfelder unsuccessfully appeal.

## IV.   CONCLUSION

Based on the foregoing reasons, Plaintiff's Request for Entry of Bill of Costs (Dkt. 90) is **GRANTED** and Plaintiff's Motion for Attorney's Fees (Dkt. 91) is **GRANTED IN PART**.

Accordingly, it is **ORDERED** that Plaintiff City of Waco is awarded and shall recover from Defendant Kleinfelder Central, Inc. **$17,714.03** in costs.

It is further **ORDERED** that Plaintiff City of Waco is awarded and shall recover from Defendant Kleinfelder Central, Inc. **$259,551.13** in reasonable and necessary attorney's fees incurred in this matter.

It is further **ORDERED** that should Defendant Kleinfelder Central, Inc. unsuccessfully renew its Motion for Judgment as a Matter of Law after the date of this Order, Plaintiff City of Waco shall be awarded an additional **$8,000** in attorneys' fees incurred responding to that Motion.

It is further **ORDERED** that should Defendant Kleinfelder Central, Inc. unsuccessfully appeal the judgment in this matter, Plaintiff City of Waco shall be awarded an additional **$30,000** in attorneys' fees incurred responding to the appeal.

**SIGNED** on January 30, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE